IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT



FILED
U.S. COURT OF APPEALS

DEC 28 2010

JOHN LEY
CLERK

U.S. COURT OF APPEALS
RECEIVED
CLERK
DEC 28 2010
ATLANTA, GA.

APPEAL CASE #10-15185-I

THE UNITED STATES OF AMERICA
Plaintiff / Appellee,

:
:
:
:
:
:

Versus

:
:
:
:
:

VERTILIO DE LA ROSA
Defendant / Appellant.-

:
:
:
:
:

BRIEF OF THE APPELLANT
VERTILIO DE LA ROSA

VERTILIO DE LA ROSA
As Pro se litigant
USMS #06499-265
MCRAE CORRECTIONAL FACILITY
P. O. DRAWER #30
MCRAE CITY, GA 31055.-

U. S. Certified Mail Receipt No. 7010 1670 0000 5090 1513.-

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS................    -I-

TABLE OF CITATIONS..............................    -II-

STATEMENT OF JURISDICTION.......................    -III-

STATEMENT OF FACTS..............................    - 01/29 -

STANDARDS OF REVIEW.............................    - 20/29 -

SUMMARY OF THE ARGUMENT.........................    - 27/29 -

ARGUMENT:

(1)   THE DISTRICT COURT BREACHED DE LA ROSA'S 6TH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL IN BARRING HIM THE RELIEF OFFERED BY THE U. S. SUPREME COURT UNDER FLORES-FIGUEROA vs. U.S.A.'S PRECEDENT, INFRA, BECAUSE THERE WAS INSUFFICIENT EVIDENCE THAT APPELLANT KNEW THAT THE MEANS OF IDENTIFICATION HE USED, SPECIFICALLY A PUERTO RICAN BIRTH CERTIFICATE, BELONG TO ANOTHER PERSON TO SUPPORT AN AGGRAVATED IDENTITY THEFT CONVICTION; THERE WAS NOT EVIDENCE AS TO HOW APPELLANT OBTAINED THE SOCIAL SECURITY NUMBER OR WHETHER HE WAS ACQUAINTED WITH THE PERSON WHO BIRTH CERTIFICATE AND SOCIAL SECURITY NUMBER HE WAS USING.   THE DISTRICT COURT, NOR THE GOVERNMENT UNDERSTOOD THE ELEMENTS OF SUCH OFFENSE AT THE TIME OF APPELLANT'S SENTENCE;

(2)   WHETHER APPELLANT'S APPOINTED COUNSEL FAILED IN ACCEPTING A 12-LEVEL ENHANCEMENT TO APPELLANT'S OFFENSE UNDER THE U.S.S.G.  §  2L1.2(b)(1)(B)  AND  ITS  UNCONSTITUTIONALITY REGARDING THE TITLE 8 USC § 1326 FOR WHICH APPELLANT WAS ALSO CONVICTED AND SENTENCED;   and

(3) THE APPELLANT'S APPOINTED COUNSEL MISREPRESENTATION DURING HIS PLEA BARGAIN NEGOTIATION.-

CONCLUSION......................................    - 29/29 -

CERTIFICATE OF COMPLIANCE.......................    - 29/29 -

CERTIFICATE OF SERVICE..........................    - 29/29 -

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

### U.S.A. vs. Vertilio De La Rosa
### Appeal Case #10-15185-I.

Appellant **Vertilio De La Rosa** files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by **11th Circuit / Rule 26.1 -FRAP-**.


THE HONORABLE U. S. DISTRICT JUDGE,
MR. JAMES I. COHN
U. S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
-FT. LAUDERDALE DIVISION-
299 E. BROWARD BLVD. - ROOM #108
FT. LAUDERDALE, FL 33301.-

U. S. MAGISTRATE JUDGE,
MR. PATRICK A. WHITE
U. S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
-FT. LAUDERDALE DIVISION-
299 E. BROWARD BLVD.
FT. LAUDERDALE, FL 33301.-

MRS. KELLY A. KARASE, AUSA,
U. S. ATTORNEY'S OFFICE FOR THE
SOUTHERN DISTRICT OF FLORIDA
-FT. LAUDERDALE DIVISION-
500 EAST BROWARD BLVD. - 7TH FLOOR
FT. LAUDERDALE, FLORIDA 33394.-

MR. JOHN LEY,
CLERK OF THE U. S. COURT
OF APPEALS FOR 11TH CIRCUIT
56 FORSYTH STREET, N.W.
ATLANTA, GA 30303.-

MRS. ANNE SCHULTZ,
Chief of Appellate Division
U. S. ATTORNEY OFFICE FOR THE
SOUTHERN DISTRICT OF FLORIDA
99 N.E.  4th Street
MIAMI, FL 33132.-

cc:  Administrative Files.-

- I -

## TABLE OF CITATIONS

CASE:                                                            —PAGE—


01.-  ATKINS vs. SINGLETARY - 965 F.2d 952, 958
                             (11th Cir. 1992).....    - 20/29 -

02.-  ATKINS vs. VIRGINIA - 536 U.S. 304, 321
                           (2002)...............    - 23/29 -

03.-  BAILEY vs. U.S.A. - 516 U.S. 137 (1995)....    - 23/29 -

04.-  BOUSLEY vs. U.S.A. - 523 U.S. 614, 618, S.Ct.
                          1604 (1998)..........    - 22/29 -

05.-  COLEMAN vs. THOMPSON - 501 U. S. 722, 753
                            (1992)...............    - 24/29 -

06.-  DODD vs. U.S.A. - 365 F.3d 1273, 1280-81
                       (11th Cir. 2004).....    - 21/29 -

07.-  GARCIA vs. U.S.A. - 278 F.3d 1210, 1213,
                         (11th Cir. 2002).....    - 21/29 -

08.-  HILL vs. U.S.A. - 368 U.S. 424, 426-27
                       (1962)...............    - 20/29 -

09.-  LOVELL vs. INS - 52 F.3d 458, 461
                      (2nd. Cir. 1995).....    - 07/29 -

10.-  MACHOBRODA vs. U.S.A. - 368 U.S. 487
                            (1962)...............    - 28/29 -

11.-  MARTIRE vs. WAINWRIGHT - 811 F.2d 1430, 1435
                             (11th Cir. 1987).....    - 20/29 -

12.-  MELENDEZ vs. U.S.A. - 518 U.S. 120, 130, 116
                           S.Ct. 2057 (1996)....    - 18/29 -

13.-  ROGERS vs. ZANT - 13 F.2d 384, 386
                       (11th Cir. 1994).....    - 21/29 -

14.-  SCHIRO vs. SUMMERLIN - 542 U.S. 348, 351-52
                            (2004)...............    - 23/29 -

15.-  SCHLUP vs. DELO - 513 U.S. 298, 327-28
                       (1995)...............    - 24/29 -

16.-  STRICKLAND vs. WASHINGTON - 466 U. S. 668
                                (1984)...............    - 20/29 -

17.-  SPAZIANO vs. SINGLETARY - 36 F.3d 1028, 1039
                              (11th Cir. 1994).....    - 20/29 -

**CASE:**                                                     —PAGE—

18.-  TEAGUE vs. LANE - 489 U.S. 288, 311 (1989).   - 22/29 -

19.-  U.S.A. vs. ALLEN - 282 F.3d 339, 343
                          (2002)...............   - 12/29 -

20.-  U.S.A. vs. BRODY - 808 F.2d 944 (1986).....   - 18/29 -

21.-  U.S.A. vs. COPELAND - 376 F.3d 61, 73
                          (2nd. Cir. 2004).....   - 07/29 -

22.-  U.S.A. vs. FERNANDEZ - 278 F.3d 150, 157
                          (2nd. Cir. 2002).....   - 08/29 -

23.-  U.S.A. vs. FLORES-FIGUERO - 129 S.Ct. 1886
                          (2009)...............   - 01/29 -

24.-  U.S.A. vs. FORNEY - 9 F.3d 1492, 1502
                          (11th Cir. 1993).....   - 27/29 -

25.-  U.S.A. vs. FRADY - 456 U.S. 152 (1982).....   - 23/29 -

26.-  U.S.A. vs. GARCIA - 281 F.Supp.2d 498, 502
                          (E.D.N.Y. 2003)......   - 28/29 -

27.-  U.S.A. vs. GONZALVEZ - 121 F.3d 1416, 1419
                          (11th Cir. 1997).....   - 27/29 -

28.-  U.S.A. vs. GORDILS - 118 S.Ct. 430 (1997)..   - 13/29 -

29.-  U.S.A. vs. HURTADO - 508 F.3d 603
                          (11th Cir. 2007).....   - 21/29 -

30.-  U.S.A. vs. JONES - 56 F.3d 62 (4th Cir. 1995)  - 20/29 -

31.-  U.S.A. vs. LAWYOR - 168 F.3d 633, 637 (1999)   - 18/29 -

32.-  U.S.A. vs. MARES - 402 F.3d 511, 520 (2005)   - 12/29 -

33.-  U.S.A. vs. MENDOZA-LOPEZ - 481 U.S. 828, 107 S.Ct.
                          (1987)...............   - 08/29 -

34.-  U.S.A. vs. MONTANO - 398 F.3d 1276, 1284
                          (11th Cir. 2005).....   - 24/29 -

35.-  U.S.A. vs. OLANO - 507 U.S. 739, 113 S.Ct.
                          (1993)...............   - 12/29 -

36.-  U.S.A. vs. PALLADINO - 347 F.3d 29, 34 (2003)  - 19/29 -

37.-  U.S.A. vs. PEREZ - 330 F.3d 97, 102
                          (2nd. Civ. 2003).....   - 07/29 -

**CASE:**                                              **–PAGE–**

38.-   U.S.A. vs. SWINTON – 333 F.3d 481, 487
                         (3rd. Cir. 2003).....    – 21/29 –

39.-   U.S.A. vs VAVAL – 404 F.3d 144, 152 (2005)    – 18/29 –

40.-   U.S.A. vs. VILLANUEVA – 515 F.3d 1234, 1238
                         (D.C.Cir. 2008)......    – 02/29 –

41.-   U.S.A. vs. VILLEGAS – 404 F.3d 355, 356
                         (5th Cir. 2005)......    – 12/29 –

42.-   U.S.A. vs. X-CITEMENT VIDEO, INC. – 513 U.S. 64,
                         77-78 (1994).........    – 02/29 –

43.-   WATERS vs. THOMAS – 46 F.3d 1506, 1510
                         (11th Cir. 1995)  ...    – 20/29 –

44.-   WADE vs. U.S.A. – 504 U.S. 181 (1992)......    – 27/29 –

45.-   WHITE vs. SINGLETARY – 972 F.2d 1218, 1220
                         (11th Cir. 1992).....    – 20/29 –

46.-   WHORTON vs. BOCKTING – 549 U.S. 406, 416
                         (2007)...............    – 22/29 –

...../

## STATEMENT OF JURISDICTION

The District Court had jurisdiction of this case pursuant to 18 USC § 3231 because the Appellant was charged with an offense against the laws of the United States.  This Court has jurisdiction over this appeal pursuant to 28 USC § 1291, after a COA was granted under 28 USC § 2253(c), which gives the courts of appeals jurisdiction over all final decisions and sentences of the District Courts of the United States.-

## BACKGROUND

**VERTILIO DE LA ROSA** was charged by indictment with making a **FALSE STATEMENT ON AN APPLICATION FOR A UNITED STATES PASSPORT** in violation of **18 USC § 1542** (Count 1), falsely representing himself to be a United States Citizen in violation of **18 USC § 911** (Count 2); making a false statement in writing to a government agency in violation of **18 USC § 1001(a)(2)** (Count 3); **Aggravated Identity Theft** in violation of **18 USC § 1028A(a)(1)** (Count 4); and illegal re-entry in violation of **8 USC § 1326(a)** (Count 5) [see CR-D.E.#8].-

De La Rosa entered a written plea agreement under which he agreed to enter a guilty plea as to Counts 1, 4, and 5 and the government agreed **to dismiss** Counts 2 and 3 after sentencing [see CR-D.E. #18]. In connection with the plea agreement, De La Rosa executed a Factual Proffer, signed by him, his defense counsel, MR. WILCOX  and the AUSA, MRS. KELLY KARASE [see CR-D.E. #19].   Prior to sentencing, a Pre-Sentence Report Investigation ("PSRI") was prepared which revealed as follows.   According to **U.S.S.G. § 3D1.2**, Counts 1 and 5 could not be grouped together as they involved separate harms, however, Count 4 was excluded from the grouping rules as the court requires a term of imprisonment for **Aggravated Identity Theft** to run consecutive to any other term under **U.S.S.G. § 3D1.1(b)(1)** [see **PSRI's ¶ 13**].-

With respect to Count 1, the PSRI set the Appellant's base offense level at **8**, pursuant to **U.S.S.G. § 2L2.2**, because the offense involved providing a false statement on an application for a United States Passport [see PSRI's ¶ 14].   Pursuant to **U.S.S.G. § 2L2.2(b)(1)**, the offense level was increased by **2-level** because the Appellant was an unlawful alien who had been deported (illegally) prior to the instant offense [see PSRI's ¶ 15].   As a result, the adjusted offense level as to Count 1 was **10** [see **PSRI's ¶ 19**].   With respect to Count 5, the PSRI set the Appellant's base offense level at **8**, pursuant to **U.S.S.G. § 2L1.2**, because the offense involved **Illegal Re-entry** after deportation [see **PSRI's ¶ 20**].   Pursuant to **U.S.S.G. §**

2L1.2(b)(1)(B)    ["the    PSRI    mistakenly    cites    to    **U.S.S.G.**  **§**
**2L1.2(b)(1)(A)**,   which   provides   for   a   **16-level**   increase   under
circumstances  <u>not  present  in  this  case</u>"],  the  offense  level  was
increased  by  **12-level**  because  the  Appellant  had  been  previously
deported  or  unlawfully  remained  in  the  United  States  after  a
conviction  for  felony  drug  trafficking  offense  for  which  the  sentence
imposed  was  **13-months**  or  less  [see  **PSRI's ¶ 21**].   Appellant  argues
that  the  USPO  clearly  erred,  due  to  Appellant's  State  Conviction  was
not  a  **Drug  Trafficking  Offense**  as  defined  by  the  **U.S.S.G. § 2L1.2**.   As
a  result,  the  adjusted  offense  level  as  to  Count  5  was  **20**  [see  **PSRI's**
**¶ 25**].-

The  combined  adjusted  offense  level  for  both  Counts  was  **20**  [see
**PSRI's ¶ 31**].   Two  levels  were  then  deducted,  pursuant  to  **U.S.S.G. §**
**3E1.1(a)**,   based   on   the   Appellant's   timely   acceptance   for
responsibility  [see  **PSRI's ¶ 33**].   De La Rosa's  total  offense  level
was  **18**  [see  **PSRI's ¶ 34**].   The  U. S.  Probation  Officer  also  determined
that  the  Appellant  had  a  total  of  **zero**  criminal  history  points  and  a
criminal  history  category  of  **I**  [see  **PSRI's ¶ 40**].-

The  statutory  term  of  imprisonment  as  to  Count 1  was  **0 to 10**
**years**  in  prison  under  **18 USC § 1546(a)**,  as  to  Count 4  was  **two-years**
consecutive  to  any  other  term  under  **18 USC § 1028A(a)(1)**,  and  as  to
Count 5  was  **zero**  to  10-years  under  **8 USC § 1326(b)(2)**  [see  **PSRI's ¶**
**69**].   Based  on  a  total  offense  level  of  **18**  and  a  criminal  history
category  I,  the  Appellant's  resulting  guideline  range  was  27 to 33
months  in  prison,  followed  by  a  <u>consecutive</u>  sentence  of  two-years  as
to  Count 4  [see  **PSRI's ¶ 70**].   On  October 3,  2008,  the  Appellant
appeared  for  sentencing  [see  CR-D.E.#22].   The  court  sentenced  him  to
a  term  of  **24-months**  for  Count 1  and  **24-Months**  for  Count 5,  to  run
concurrently,  and  **24-MONTHS**  for  Count 4  to  run  **consecutive**  to  Count 1
and 5  [see  CR-D.E.#23].-

On  September  2,  2009,  Appellant  filed  motion  to  vacate  his
sentence  pursuant  to  **28 USC § 2255 and memorandum of law in support**
**thereof**  [see  CV-DE#1].   The  government  does  not  dispute  that  his
motion  was  timely  filed,  and  under  **ADAMS vs. U.S.A.** - 173 F.3d 1339

(11th Cir. 1999), **"A prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing"**. The United States filed an answer to the complaint [see CV-D.E. #6]. Appellant filed a reply [see CV-D.E.#7], second reply (CV-D.E. #8), and **Motion for Summary Judgement** (CV-D.E.#10). The government next filed a response in opposition to the motion for <u>Summary Judgment</u> (CV-D.E.#12), and Appellant filed a reply to the response (CV-D.E.#13). Lastly, Appellant filed a motion requesting a <u>Declaratory Judgment</u> in his favor (CV-D.E.#14).-

On September 7, 2010, the U. S. Magistrate Judge, **MR. PATRICK A. WHITE**, filed a **REPORT AND RECOMMENDATION** concluding that the Appellant's **28 USC § 2255 Motion** be **GRANTED** as to claim three, and Appellant's conviction as to Count 4 for **Aggravated Identity Theft** be **VACATED** in conformity with the holding in **FLORES-FIGUEROA** and an amended judgment entered. However, on October 14, 2010, the Honorable U. S. District Judge, **MR. JAMES I. COHN**, filed an **ORDER** and adjudged that: (1) The government's Objection is **SUSTAINED**; (2) The Magistrate's R & R was **ADOPTED** as to Claims 1, 2, 4, 5, 6, and 7; (3) The Magistrate Judge White's R & R was **REVERSED** as to Claim 3; (4) The Motion to vacate (DE#1) was **DENIED WITH PREJUDICE**; and (5) All pending motions were also **DENIED** as **MOOT**. The Clerk of Court was instructed to **CLOSE** this case.-

On November 4, 2010, Appellant filed a **"COA"** under **Rule 4(a)(1)(B) -FRCVP-, and RULES GOVERNING § 2255 CASES -RULE 11- FOR A "COA"**. Such "COA" was required by Appellant to the District Court's Order of Dismissal, due to the government's final objection to the Magistrate's R & R were not **written notified** to Appellant as required by **Rule 5(a)(1) and 77(d)(1) -FRCVP-** concerning to **Proof of Service** and/or **Certificate Of Service**, and the Appellant's **5th Amendment Right to Due Process**.-

On November 9, 2010, the Honorable U. S. District Judge, MR. JAMES I. COHN, **denied** the Appellant's request for a "COA", due to he

has not made a substantial showing of the denial of a constitutional right that is clearly demonstrated in this Brief. Because under **Rule 22(b)(1) -FRAP- and 28 USC § 2253(c)**, Appellant is allowed to re-file a "COA", on November 29, 2010, the Appellant filed said request for a "COA" before the 11th Circuit Court of Appeals. In this request to the 11th Circuit, Appellant is clearly demonstrating **the denial of a constitutional right**, which was established in **FLORES-FIGUEROA**, supra.-

## STATEMENT OF FACTS

### (ARGUMENTS)

**PETITIONER'S COUNSEL FAILED TO INVOKE THE SUPREME COURT DECISION IN <u>U.S.A. vs. FLORES-FIGUEROA</u> - No. 08-108, WL 2882195*1, dated MAY 4, 2009, IN WHICH THE COURT ERRONEOUSLY SENTENCED HIM TO ∠4-MONTHS' IMPRINSOMENT FOR VIOLATION OF 18 USCS § 1028(a)(1):**

Pursuant to the Supreme Court's decision in **<u>FLORE-FIGUEROA</u>**, supra, Alien Appellant's conviction of <u>Aggravated Identity Theft</u>, for attempting to obtain an U. S. Passport in another person's name, required government to prove that he knew the Puerto Rican Birth Certificate belonged to another person, **not merely that Appellant knew he was using a false Birth Certificate and Security Card number.** In <u>Flores-Figueroa</u>, the conviction was incorrectly supported as follow:

**a).- The "aggravated identity theft" statute requires proof that the defendant knew that the means of identification he used belonged to another person:**

Petitioner does not contest that in using false identification documents to obtain himself employment in the United States, he committed acts of identification <u>fraud</u>, for which he pled guilty and was sentenced to 24-Months' imprisonment. The question before this District Court is:

**"WHETHER HE ALSO COMMITTED AGGRAVATED IDENTITY THEFT WITHIN THE MEANING OF THE 18 USCS § 1028(a)(1), EVEN THOUGH HE HAD NOT INTENTION OF STEALING ANYONE'S IDENTITY AND DID NOT, IN FACT, KNOW THAT THE IDENTIFICATION NUMBERS HE WAS USING ACTUALLY BELONGED TO OTHER PEOPLE.-**

The answer to that question is **"NO"**. In § 1028(a)(1), the adverb "knowingly" is followed by a series of transitive verbs ("transfer, possesses, or uses") which are then followed by a direct object phrase ("means of identification of another person"). In common usage, a state-of-mind adverb like "knowingly" is ordinarily understood to apply not only to adjacent verbs, but also to any direct object that may follow.-

Petitioner recognized before the U. S. Probation Officer, MR. RALPH HUGHES, the Special Agent of the U. S. Department of State, Bureau of Diplomatic Security, MR. JOSEPH DESMARAIS, and the Assistant United States Attorney's Office, MR. KELLY S. KARASE, ALL d/b/a U. S. Government that "he purchased the Puerto Rico birth certificate along with a Social Security Card in the name of A.S.B. for US$1,500.00, but that he did not theft the identity of another person" [see Petitioner's PSR at page #4, Item #7, and the Affidavit in support of his indictment in which the Special Agent, MR. JOSEPH P. DESMARAIS acted as "Affiant"]. Therefore, it is thus unsurprising that the government has conceded elsewhere that the knowledge requirement of § 1028(a)(1) is not limited to the provision's verbs but extends, at least in part, to the verbs direct object phrase. In <u>U.S.A. vs. VILLANUEVA-SOTELO</u> - 515 F.3d 1234, 1238 (D.C.Cir. 2008), the court held that **"As the government concedes, the mens rea requirement must extend at least to the direct object's principal modifier, <u>of identification</u>".**-

Having made that reasonable concession, it is hard to see how the government can maintain that, as a linguistic matter, the knowledge requirement can only be read to extend to "means of identification" but not to the qualifying phrase "of another person" once the word "knowingly" is "emancipated from merely modifying the verbs", and is conceded to extent to the verbs' direct object, then "as a matter of grammar it is difficult to conclude that the word "knowingly" modifies one of the elements in the § 1028(a)(1), but not the other". In <u>U.S.A. vs. CITEMENT VIDEO, INC.</u> - 513 U.S. 64, 77-78 (1994), the Supreme Court held that "The object of the provision's verbs, after all, is the entirety of the phrase <u>means of identification of another person</u>". The normal commonsense reading of a § 1028(a)(1) of a criminal statute introduced by the word "knowingly" is to treat that adverb as modifying each of the elements of the offense identified in the remainder of the subsection [see <u>X-CITEMENT VIDEO, INC.</u>, supra]. Of course, Congress can demonstrate a different intent through grammatical or structural cues, but there is nothing in the

- Page No. 02 of 29 -

language of § 1028(a)(1) to signal to the reader that the knowledge requirement unexpectedly stops halfway though the phrase "means of identification of another person".-

The most natural reading of the language of § 1028(a)(1) is confirmed by the structure and accepted meaning of its immediate neighbor, § 1028A(a)(20. But the more sensible reading is that Congress intended the knowledge requirement to extend to the entirety of the direct object phrase in every instance consistent with ordinary usage.-

Petitioner concludes that his counsel also failed in challenge his previous argument before the sentencing court, and that "knowingly" modifies NOT only "transfer, possesses, or uses", but also the phrase "of another person", which would require the government to prove that petitioner knew the means of identification belonged to another person. Therefore, his counsel showed clearly unprofessional and ineffective assistance.-

PETITIONER'S COUNSEL FAILED AS <u>INNEFFECTIVE ASSISTANCE</u> IN ACCEPTING 12-LEVELS ENHANCEMENT UNDER U.S.S.G. § 2L1.2(b)(1)(B), WHEN HIS PROCEEDING AT WHICH ORDER OF DEPORTATION WAS ISSUED ON JANUARY 5, 1995, IMPROPERLY DEPRIVED HIM OF THE OPPORTUNITY FOR <u>JUDICIAL REVIEW</u> AS REQUIRED TO COLLATERALLY ATTACK IMMIGRATION JUDGE ERRONEOUS ADVICED HIM THAT HE WAS INELIGIBLE FOR DISCRETIONARY RELIEF FROM DEPORTATION AMOUNTED TO FUNDAMENTAL PROCEDURAL ERROR:

Petitioner's counsel showed an unprofessional, insane and ineffective assistance in accepting that the government illegally enhanced him with <u>12-levels</u> under U.S.S.G. § 2L1.2(b)(1)(B) because he was previously deported or <u>unlawfully remanded</u> in the United States after conviction of aggravated felony.-

On July 9, 2008, Petitioner was indicted under 8 USCS § 1326(a) and (b)(1) for the crime of <u>ILLEGAL RE-ENTRY INTO THE UNITED STATES SUBSEQUENT TO DEPORTATION FOR A FELONY</u>. His counsel showed <u>ineffective assistance</u> in timely filing a **MOTION TO DISMISS** this indictment (Count #5) under **Rule 12(b)(2)** and the 5th Amendment **Right** on the ground that Petitioner prior deportation was **unlawful**. For the reasons stated below, this court may **GRANT** Petitioner's request:

(1) Petitioner (**Vertilio De La Rosa**) was born in the city of Hato Mayor del Rey, Dominican Republic on October 28, 1967. In December 1, 1990, at the age of 23, Petitioner immigrated to the United States as a <u>legal permanent resident</u>. On or about October 11, 1993, Petitioner was indicted by a Grand Jury of the County of New York accused of the crime of **Criminal Sale of a Controlled Substance in the third degree**, in violation of the Penal Law § 220.39(1). Petitioner pled guilty to the above indictment. He was subsequently sentenced on May 23, 1994, to <u>**SIX (6) MONTHS**</u> imprisonment under the custody of the Commissioner of Correction of the City of New York thru the New York City Correctional Institution for men, as per his case No. 10332-93, by the Honorable Judge, **MR. HOWARD E. BELL** in the

Supreme Court of the State of New York;

(2)  Because Petitioner had been convicted of an aggravated felony, the U. S. Immigration and Naturalization Service ("INS") commenced deportation proceedings against him by an **order to show cause and notice of hearing** (Form I-221, Rev. 6/12/92 -N-) dated August 2, 1994, under file No. A90 680 194.  The initial hearing on his deportation was originally scheduled for November 14, 1994, at 01:00PM at the **OFFICE OF THE IMMIGRATION JUDGE, FEDERAL DETENTION CENTER, 5060 E. WHATLEY RD., OAKDALE, LA 71463;**

(3)  Petitioner's deportation hearing was opened in November 14, 1994.  Because Petitioner could not afford an attorney, he was supposed to be represented at the proceedings by one, however, the Immigration Proceedings did not show that an attorney was appointed, due to a **FORM EOIR 28**, also cited as **"NOTICE OF ENTRY OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE"** was filed;

(4)  When the proceedings end, there was some questions as to whether Petitioner had receive the forms necessary to file the formal petition for **8 CFR § 212(c) relief** [also cited as **8 USCS § 1182(c) in 1994 of the Immigration and Nationality Act "INA"**], rather than:

(a)  The voluntary departure as provided in § 242(b);

(b)  Suspension of deportation or voluntary departure as provided in § 244(e); and

(c)  Adjustment of status or change of status as provided in § 245, 248 or 249, **ALL** of the "INA".-

Because the Immigration Judge, **MR. CHARLES A. WIEGAND III** believed that Petitioner was ineligible for a § 212(c) waiver as a matter of law, due to Petitioner was statutorily barred from seeking § 212(c) relief under § 440(d) of the new **Antiterrorism and Effective**

-  Page No. 05 of 29  -

Death Penalty Act of 1996 ("AEDPA"), which was eliminated on a retroactive basis, § 212(c) relief for individuals like Petitioner who had pled guilty before the effective date of the new legislation. Therefore, the above Immigration Judge concluded, Petitioner was deportable as an aggravated felon pursuant the above statutes of the "INA".-

Petitioner was convicted before the date of enactment of "AEDPA" and as such is not encompassed therein. On or about July 9, 2008, Petitioner, following a verification of his identity in Miami-Dade County, in the Southern District of Florida through a fingerprint match with previously-obtained fingerprints stored in a FBI database, for which he was arrested and indicted with illegal re-entry to the United States in violation of the 8 USCS § 1326(a) and (b)(1). Therefore, Petitioner argues that his counsel failed to file a motion to dismiss that indictment on the ground that the underlying deportation order was invalid.-

Both, the "AEDPA" and the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA") became law in 1996, with the fate of Aliens facing deportation as a result of felony convictions entered prior those enactments. Under the revised Immigration Law, an Alien who is convicted of an aggravated felony becomes automatically deportable. Prior to April 24, 1996, however, a lawful permanent resident convicted of such an offense, but who had live in the United States at least seven (7) consecutive years, was eligible to file for a discretionary waiver of deportation as long as he had been "convicted of one or more aggravated felonies and had served for such felony or felonies a term of imprisonment of at least five (5) years, rather than SIX (6) MONTHS" [see 8 USCS § 1182(c) of 1994].-

Whether to grant such discretionary relief commonly referred to as a § 212(c) waiver-depended upon a balancing of the "adverse factors evidencing an Alien's undesirability as permanent resident

with the social and humane considerations presented in his behalf" [see **U.S.A. vs. PEREZ** - 330 F.3d 97, 102 (2nd. Cir. 2003); see also **LOVELL vs. INS** - 52 F.3d 458, 461 (2nd Cir. 1995)]. The government at the deportation proceeding did not dispute that Petitioner, a lawful permanent resident at the commencement of his deportation hearing and who had not served a term of imprisonment of at least **five (5) years** for an aggravated felony, would have been eligible for § 212(c) relief under the "INA" had the laws remained unchanged.-

On its effective date of April 24, 1996, "AEDPA" amended the 8 USCS § 1182(c) to render Aliens who had pled guilty to aggravated felony, regardless of their length of residency in the United States, ineligible for **§ 212(c) relief** [see "AEDPA" § 440(d)]. On September 30, 1996, Congress again amended the "INA", this time, § 212(c) was **repealed** entirely and replaced with a new section granting the Attorney General the discretion to cancel deportation only for a narrowly defined class of inadmissible or deportable Aliens, a class which did not include persons "convicted of any aggravated felony" [see "IIRIRA" § 304(b)].-

For several years following the "AEDPA" and "IIRIRA", "the law was **unclear** as to whether and how "AEDPA" and "IIRIRA" applied to pre-enactment convictions and guilty pleas" [see **U.S.A. vs. GARCIA-JURADO** 281 F.Supp.2d 498, 502 (E.D.N.Y. 2003)]. At the time of Petitioner's deportation hearing the INS' position was that the 1996 amendments to "INA" applied retroactively to aliens who, like Petitioner, had pled guilty to at least one (1) aggravated felony prior the effective date of the amendments, but this position was advanced despite the fact that the Alien may have, pled guilty applied for § 212(c) relief [see **U.S.A. vs. COPELAND** - 376 F.3d 61, 73 (2nd. Cir. 2004)].-

The Title 8 USCS § 1326(a) makes it crime for an Alien who has been deported or removed to enter, attempt to enter, or be found in the United States without the express consent of the Attorney

General, and authorizes a maximum prison sentence of two (2) years for this offense. In 1988, Congress added subsection (b)(1), which supplements subsection (a) by authorizing a maximum prison term of twenty (20) years for "any Alien described" in subsection (a) if the initial deportation was subsequent to a conviction for commission of an aggravated felony". However, because a prior deportation is a necessary element of the crime of illegal re-entry, the Supreme Court has held that "An Alien can defend against such a charge by challenging the validity of the deportation order upon which the charge is predicated" [see U.S.A. vs. MENDOZA-LOPEZ - 481 U. S. 828, 837-39, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987)].-

To establish "fundamental unfairness" under 8 USCS § 1326(d)(3), Petitioner "must shown both a fundamental procedural error and prejudice resulting from that error" [see U.S.A. vs. FERNANDEZ-ANTONIA - 278 F.3d 150, 157 (2nd Cir. 2002)]. Petitioner argues that he has met both of these requirements because:

(a)  The Immigration Judge committed fundamental error by giving him erroneous information for § 212(c) relief, and

(b)  There is a reasonable probability that Petitioner would have been granted § 212(c) relief had he been allowed to seek it.-

"Prejudice is shown where there is a reasonable probability that, but for the Immigration Judge's error, the Petitioner would have been granted section 212(c) [see COPELAND, supra].-

Petitioner has satisfied all the prongs requires by 8 USCS § 1326(d). As a result, his deportation order violated his due process rights (5th Amendment / U. S. Constitution). Therefore, he cannot be the basis for the essential element of prior deportation which lies at the root of the pending illegal re-entry charge. His counsel failed in timely request to dismiss the count #5 (Illegal Re-entry) in violation of the 8 USCS § 1326(a) and (b)(1). FOR THE FOREGOING

REASONS AND ARGUMENTS, this Honorable Court may grant Petitioner's request as delineated hereinbefore.-

**PETITIONER'S COUNSEL FAILED TO ARGUE REGARDING THE UNCONSTITUTIONALLY BETWEEN THE TITLE 8 USCS § 1326, AND THE 12-LEVELS ENHANCEMENT UNDER U.S.S.G. § 2L1.2(b)(1)(B):**

Petitioner argues that his counsel showed an **unprofessional, insanity**, and **ineffective** assistance due to the District Court committed **plain error** during Petitioner's sentencing hearing by enhancing his sentence by 12-levels on the basis of his 1993 State Conviction of **6-Months**, belonging to the Court of New York in the Docket Case No. 93-10332 for **the possession of a marked bill (U.S. Currency) without any controlled substance as required by U.S.S.G. § 2L1.2(b)(1)(B)** to be classified as **"drug trafficking offense"**. Petitioner states that he was sentenced to **6-Months** of imprisonment at that time, for **the possession of a marked bill (U. S. Currency)**. Such State conviction criminalize a variety of conduct, including acts that CANNOT form the basis for a sentencing enhancement under **U.S.S.G. § 2L1.2(b)(1)(B)**.-

Petitioner states that under § 2L1.2(b)(1)(B) of the Sentencing Guidelines, a "Defendant's offense level is increased by 12-levels if he has previously been convicted of a **"drug trafficking offense"** for which the sentence imposed was 13-Months or less". As petitioner previously has stated, the Sentencing Guidelines define a **"DRUG TRAFFICKING OFFENSE"** as:

"[A]n offense under federal state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense". [Id. at U.S.S.G. § 2L1.2, application note 1(B)(iv)].-

The Pre-sentence Report ("PSR") stated that Petitioner had been convicted of such a **"drug trafficking offense"**, namely the offense of **"POSSESSION OF A MARKED BILL (U.S. CURRENCY) AS A POSSESSION OF A CONTROLLED SUBSTANCE"**. Petitioner also argues that District Court

**erred** because it relied on the PSR's information, which recognized that **"THE CIRCUMSTANCES OF THIS STATES CONVICTION ARE NOT AVAILABLE,** therefore, if such circumstances were not available, and if the government could not clarify or confirm a **"drug trafficking conviction"**, HOW THE GOVERNMENT CAN ESTABLISH THAT PETITIONER'S STATE CONVICTION WAS A **"DRUG TRAFFICKING OFFENSE"**. The events were too broad to establish that petitioner has committed a **"drug trafficking offense"**.-

Petitioner's 1993 State Conviction as **"possession of a marked bill (U. S. Currency), cataloged by the government as a possession of a controlled substance** in the New York City Police Department via a State Court Docket Case No. 93-10332, in which the Probation Officer recommended a **12-levels** enhancement pursuant to § **2L1.2(b)(1)(B)** on the basis of this information, but the Probation Officer did not state from where he obtained this factual information about petitioner's conviction **is a clear error for sentencing purpose**. The court is not authorize to be referenced to a source other than the **indictment** to determine whether the prior petitioner's 1993 State Conviction could be classified as a **"drug trafficking offense"**. Therefore, Petitioner argues that the District Court **erred**, and that **he is entitled to re-sentence for his** counsel's misrepresentation, and unprofessional service.-

As for the statutory definition of the New York City Statute and events, on which this court could properly rely, it encompasses activity that does not fall within the definition of a **'drug trafficking offense"** under § 2L1.2. None of the Petitioner's facts fall within the definition of **"drug trafficking offense" under § 2L1.2**, which covers only the **manufacture, import, export, distribution, or dispensing of a controlled substance, or possession with the intent to do any of these things** [see **U.S.S.G. § 2L1.2**, application note (1)(B)(iv)]. Therefore, the District Court could not have found that Petitioner was convicted of a **"drug trafficking offense"** solely by looking a the language of the PSR's information because it was overbroad, and **"error is "plain" if it is "clear" or**

"obvious", which affected Petitioner's substantial rights [see U.S.A. vs. OLANO - 507 U.S. at 739, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)].-

   a).- The U.S.S.G. § 2L1.2(b)(1)(B) did not include "Petitioner's 1993 State Conviction's events" into definition of "drug trafficking offense":

   Petitioner also argues that the District Court erred in enhancing him 12-levels because it relied on the PSR's information only. Petitioner's 1993 State Conviction events were too broad to establish that he has committed a "drug trafficking offense".-

   b).- The District Court's error affected Petitioner's substantial right:

   Under decision in U.S.A. vs. OLANO, supra, and U.S.A. vs. VILLEGAS - 404 F.3d 355, 356 (5th Cir. 2005), there is a plain error when:

   (1)  There was an error;

   (2)  The error was clear and obvious; and

   (3)  The error affected the Defendant's substantial right.-

   When these three (3) conditions are ALL met, the court may exercise its discretion to correct the error only if the error "seriously affects the fairness, integrity, or public reputation of judicial proceeding [see also U.S.A. vs. MARES - 402 F.3d 511, 520 (2005)].-

   c).- District Court's misapplication of the guidelines also affected Petitioner's substantial right, and the fairness of the judicial proceeding:

   This court is not free to consider any facts, but may consider the statutory definition of the offense, the charging paper, and the jury instructions [see U.S.A. vs. ALLEN - 282 F.3d 339, 343 (2002)]. In such decision, the court has held that "The determination of

whether a <u>drug trafficking offense</u> was committed falls into the narrow range of cases where the court may consider information other than the statutory definition of the offense". The District Court's error resulted in the imposition of a sentence that was **substantially greater** than would otherwise have been permitted under the Sentencing Guidelines regarding the <u>12-levels</u> enhancement. Therefore, Petitioner's substantial rights, and the fairness of the judicial proceedings has been affected too.-

Petitioner's counsel also failed to invoke the Supreme Court decision that stated **"The District Court also have <u>authority</u> under 28 USCS § 2255 to resentence a defendant for challenge a <u>drug trafficking offense,</u> which include authority to consider correction of offense level enhancement given interdependent nature of sentence"** [see <u>U.S.A. vs. GORDILS</u> - 118, S.Ct. 430, 552 U. S. 975, 139 L.Ed.2d 330].-

**PETITIONER'S COUNSEL MISREPRESENTATION, INEFFECTIVE AND UNPROFESSIONAL ASSISTANCE WERE SHOWED DURING THE PLEA BARGAIN NEGOTIATION, DUE TO THE FOLLOWING PETITIONER'S REASONS AND ARGUMENTS:**

Petitioner and the government entered into a plea agreement. Pursuant to the plea agreement, petitioner agreed to plead guilty to the COUNTS 1, 4, and 5 of the indictment information. He also acknowledged his understanding of the penalties to which he was subject:

(1)  A statutory maximum term of imprisonment of up to 10 years, followed by a term of Supervised Release of up to 3 years, and a fine of up to US$250,000.00 as COUNT I;

(2)  A mandatory term of imprisonment of 2-years, followed by a term of Supervised Release of up to 3-years, and a fine of up to US$250,000.00 as to COUNT 4;

(3)  A statutory maximum term of imprisonment of up to 10-years, followed by a term of Supervised Release of up to 3-years, and a fine for up to US$250,000.00 as to COUNT 5; and

(4)  A special assessment of US$300.00 due at the time of sentencing.-

The plea agreement further provided that the petitioner:

"Understands that the sentence to be imposed upon him is within the **discretion of the sentencing court.** Subject to the statutory maximum and mandatory minimum penalties and the provisions of the U. S. Sentencing Guidelines [see Paragraph #3, page Nos. 1 and 2, in the plea agreement].-

In imposing the sentence, the court must take into account the sentencing guidelines, along with the other factors set forth in **18 USCS § 3553.** While the court **is not ultimately bound to impose a sentence within the applicable sentencing guidelines ranges,** its

sentence must be reasonable based upon consideration of ALL relevant sentencing factors warranting the filing of motion at the time of sentencing recommending:

(1)  A downward departure from the applicable guideline range, pursuant to U.S.S.G. § 5K1.1; and

(2)  Warranting the filing of a motion for a reduction of sentence **within one (1) year** of the imposition of sentence, pursuant to **Federal Rule of Criminal Procedure, Rule 35(b)** [Id. at paragraph #8, page Nos. 3 and 4].-

The government agreed that it would recommend an "Acceptance of Responsibility" of two-levels downward adjustment to the applicable sentencing guideline ranges, pursuant the U.S.S.G. § 3E1.1. However, the government did not offer any explanation in its failure to provide an additional one-level adjustment, pursuant the U.S.S.G. § 3E1.1(a)(b), even if petitioner's recognition and affirmative and timely acceptance of personal responsibility.  The Probation Officer as a matter of law made the above comment in the paragraph #11, page #5, of the Pre-Sentence Report ("PSR").  The plea agreement noted that court **would not be bound by** its terms, or by any **recommendation, stipulations, or request made by the parties** [see paragraph #9, page #4 in the plea agreement].-

Regarding the cooperation (substantial assistance to be considered) in paragraph No. 8, page No. 3 of the above plea agreement, petitioner and the government also entered into a cooperation agreement.  Petitioner reiterated his agreement to plead guilty to count 1, 4, and 5 of the indictment information.  He also agreed to cooperate with the government with respect to ALL of the activities of himself and others about which the government may inquire, including truthfully testifying before the grand jury, and at trial or other proceedings.  In exchange for petitioner's cooperation the government agreed that it would not bring any additional charges relating to his counts 2 and 3 of the indictment information, pursuant the paragraph No. 2, page No. 1 of the plea

agreement.-

Petitioner argues also, that his counsel showed a poor professional plea bargain negotiation in NO challenge the SELF-INCRIMINATION matter, because the government did not warrant that "self-incrimination information provided by petitioner pursuant to his cooperation will not be used in determining the applicable sentencing guidelines range, pursuant to U.S.S.G. § 1B1.8; future prosecution against him; and in violation of petitioner's **5th amendment right** / U. S. Constitution regarding self-incrimination issues. However, it reserved the right to recommend a specific sentence within the applicable range determined by the court and the right to advise the court and the Probation Officer of any information subject only to the provisions of the § 1B1.8 [see paragraph #6, page #3, in the plea agreement].-

Pursuant the paragraph #8, page #3 of the plea agreement, the government retained <u>sole discretion</u> to determine whether petitioner provided substantial assistance in the investigation or prosecution of others who committed criminal offenses. Should it determine that the petitioner did provide substantial assistance, the government agreed to "recommend a downward departure under either or both of U.S.S.G. § 5K1.1 and Rule 35(b) -FRCRP-. However, the government's recommendation is a **prediction, not a promise**, and is not binding on the government's decision [see paragraph #12, page #5 in the plea agreement].-

The plea agreement further provided that the government may **consider** any relevant facts known to it at the time the agreement was executed in determining whether petitioner "provided substantial assistance warranting a motion for a downward departure under U.S.S.G. § 5K1.1 and/or Rule 35(b) -FRCRP- [see paragraph #8 and 9, page #3 and 4 in the plea agreement]. The government retained the **sole and <u>unreviewable judgment</u>** to determine the extent of its recommendation for a downward departure, should it determine that

such a motion would be made.  However, the agreement provided that "the final decision as to how much, if any, reduction in sentence is warranted because of that assistance rest solely with the sentencing court [see paragraph #9, page #4 in the plea agreement].  The plea agreement additionally provided that "The court is under NO obligation to grant 5K1.1 and/or Rule 35(b) -FRCRP-'s motion, if the government exercise its discretion to file any such motion, and the court is under no obligation to reduce petitioner's sentence for his cooperation".-

The plea agreement also provided that the government will NOT be required to make sentencing recommendation if petitioner:

(1)  Fail or refuses to make full, accurate, and complete disclosure to the government of the circumstances surrounding the relevant offense conduct;

(2)  Is found to have misrepresented facts to the government prior to entering the plea agreement; or

(3)  Commits any misconduct after entering into the plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentation to any governmental entity or official.  Petitioner would not be permitted to appeal or withdraw his plea agreement, and the government will not be affected of its right and/or duty to appeal as set forth in the Title 18 USCS § 3742(b).  The government could then prosecute petitioner for any federal criminal violation of which it had knowledge [see paragraphs #11 and 12, page #5 in the plea agreement].-

The government would also be permitted to use any information, statement, or testimony of the petitioner against him in any future prosecution.  The government could oppose any downward adjustment, advocate any upward adjustment, use any information it possessed to determine the applicable guidelines range, decline to make or withdraw a 5K1.1 and/or Rule 35(b) -FRCRP-'s motion for downward departure, notwithstanding substantial assistance provided by petitioner, and recommend a sentence within or above the applicable guideline range determined by the court.-

**FOR THE FOREGOING ANALYSIS**, petitioner argues, that without a motion by the government, a District Court "lack[s] authority to sentence a petitioner less than the statutory minimum, pursuant to 18 USCS § 3553(e) [see **MELENDEZ vs. U.S.A.** - 518 U.S. 120, 130, 116 S.Ct. 2057, 2063]. Moreover, under U.S.S.G. § 5K1.1, the government may make a motion for a departure below the sentencing guidelines range without necessitating a motion to depart below the statutory minimum [**MELENDEZ**, supra]. Therefore, there is not authority to sentence petitioner below the statutory minimum absent some other circumstances.-

There was a **breach of the plea agreement** since the plea bargain began between petitioner's counsel and the government. Petitioner's counsel failed to object such contention, or claim the remedy for which could be requiring the government to move pursuant the **18 USCS § 3553(e)**. The government should be compelled to so move, and petitioner could be re-sentenced without regard to the statutory mandatory minimum, because "the plea agreement are interpreted according to contract law principles" [see **U.S.A. vs. VAVAL** - 404 F.3d 144, 152 (2005)]. They are construed "strictly against the government" and courts should "not hesitate to scrutinize the government's conduct to ensure that it comports with the highest standards of fairness" [see **U.S.A. vs. LAWLOR** - 168 F.3d 633, 637 (1999)]. "To determine whether a plea agreement has been breached, a court must look to what the parties reasonably understood to be terms of the plea agreement, prosecutors must meticulously perform their obligation under plea agreement, since such agreement require defendants to waive fundamental constitutional rights" [**LAWLOR**, supra].-

Once it has been determined that a plea agreement has been breached, the remedy is generally "either to permit the plea to be withdraw or **to order specific performance of the agreement** [see **U.S.A. vs. BRODY** - 808 F.2d 944, 947 (1986)]. The choice of remedies is "generally a discretionary one guided by the

circumstances of each case" [see **U.S.A. vs. PALLADINO** - 347 F.3d 29, 34 (2003)].-

The plea agreement executed by petitioner and the government required that, should the petitioner **truthfully cooperate, the government would determine if such truthful cooperation constituted substantial assistance**. If the government determined that petitioner provided substantial assistance, then "it may, in its **sole discretion**, recommend a downward departure as the government stated during petitioner's sentencing hearing ["A Rule 35 -FRCRP-will be filed on petitioner's favor", but nothing have happened at this time].-

The language makes clear that, even if the petitioner provided substantial assistance, the government was required to:

   **(1)**  Recommend a downward departure of any kind; or

   **(2)**  Recommend a downward departure under both and U.S.S.G. § 5K1.1 or Rule 35(b) -FRCRP-.-

Every time a motion for downward departure was mentioned in the plea agreement, disjunctive connective were used [i.e. "or", "both", "and/or", and "prediction is not a promise", etc.], further indicating the parties' intent that the agreement was not bound by this language to make both types of motion. The parties could not reasonably have understood the terminology "or", "both", "and/or", and that the "prediction" is not a "promise". Therefore, petitioner conclude that his counsel failed to attack during the plea bargain negotiation, that the appropriate remedy was or is **specific performance for the breach of the plea agreement**. In short, the government did breach the plea agreement provisions in failing to submit the 5K1.'s motion at sentencing hearing as the value of petitioner's substantial assistance and any other mitigating circumstances.-

## STANDARD OF REVIEW

The law is clear that § 2255 authorizes a prisoner to move a sentencing court to vacate, set aside, or correct a sentence where "the sentence was imposed in violation of the Constitution or laws of the United States, or ......the court was without jurisdiction to impose such sentence, or...... the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack" [see 28 USC § 2255(a); see also HILL vs. U.S.A. - 368 U. S. 424, 426-27 (1962)]. "A sentence is otherwise subject to collateral attack where there is an error constituting a fundamental defect which inherently results in a complete miscarriage of justice" [see U.S.A. vs. JONES - 56 F.3d 62 (4th Cir. 1995) -citations omitted-].-

In order for the Appellant to prevail on a claim of ineffective assistance of counsel, he must establish that (1) his counsel's representation fell below an objective standard of reasonableness; and (2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different [see STRICKLAND vs. WASHINGTON - 466 U. S. 668 (1984)]. The standard is the same for claims of ineffective assistance on appeal [see MATIRE vs. WAINWRIGHT - 811 F.2d 1430, 1435 (11th Cir. 1987)]. A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied [see MATIRE, supra; see also WATERS vs. THOMAS - 46 F.3d 1506, 1510 (11th Cir. 1995)].-

Review of counsel's conduct is to be highly deferential [see SPAZIANO vs. SINGLETARY - 36 F.3d 1028, 1039 (11th Cir. 1994)], and second-guessing an attorney's performance is not permitted [see WHITE vs. SINGLETARY - 972 F.2d 1218, 1220 (11th Cir. 1992)]. "Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight" [see ATKINS vs. SINGLETARY - 965 F.2d 952, 958 (11th Cir. 1992)]. Because a "wide range" of performance is constitutionally acceptable, the cases in which Habeas Petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between" [see ROGERS

**vs. ZANT** - 13 F.2d 384, 386 (11th Cir. 1994)].-

Petitioner argues that his counsel was ineffective in failing to argue that he did not commit aggravated identity theft under **18 USC §1028A(a)(1)** and the Supreme Court's interpretation of this statute in **FLORES-FIGUEROA vs. U.S.A.** - 129 S.Ct. 1886 (2009), because the Petitioner lacked the requisite knowledge, and because neither the District Court, nor the Government understood the elements of the offense at that time. In addition, the Appellant argues that he is actually innocent of the crime because he did not know that the identification actually belonged to another person.-

When the court sentenced Appellant, the 11th Circuit's opinion in **U.S.A. vs. HURTADO** - 508 F.3d 603 (11th Cir. 2007), was controlling. In that case, the court held that **"§ 1028A(a)(1)** did not require the government to prove that the defendant knew that the means of identification that he possessed and used belonged to another actual person". In **FLORES-FIGUEROA**, supra, the Supreme Court expressly REJECTED the **HURTADO** court's interpretation of the statute and held that "§ 1028A(a)(1) requires the government to show that the defendant knew that the means of identification at issue belonged to another person". Appellant argues that in light of **FLORES-FIGUEROA**, supra, his conviction and sentence for aggravated identity theft can no longer stand because the government failed to present evidence that he knew that the identification at issue belonged to another person. The government expressly addresses, and rejects, Appellant's actual innocence argument.-

While the Supreme Court is the only authority capable of creating a new right, for a **first § 2255** motion, even a District Court may determine retroactive applicability [see **DODD vs. U.S.A.** - 365 F.3d 1273, 1280-81 (11th Cir. 2004); citing **GARCIA vs. U.S.A.** - 278 F.3d 1210, 1213 N.4 (11th Cir.), cert. denied, 537 U.S. 895 (2002); see also **U.S.A. vs. SWINTON** - 333 F.3d 481, 487 (3rd Cir.), cert. denied, 540 U.S. 977 (2003). In addition to holding that District Court may determine retroactivity, the 11th Circuit in **DODD**, supra also set forth its reasoning in detail regarding when the statute of

limitations begins to run under **28 USC § 2255(f)(3).**-

Appellant also argues that his guilty plea is constitutionally valid only to the extent that it is voluntary and intelligent [see **BOUSLEY vs. U.S.A.** - 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)].  A plea is not intelligent **"unless a criminal defendant first receive real notice of the true nature of the charge against him**, the first and most universally recognized requirement of due process".  To this end, **Rule 11(b)(1)(G) -FRCRP-** requires that a defendant be adequately informed of and understand "the nature or each charge to which the defendant is pleading".-

In **Bousley**, the defendant argued, in part, that his guilty plea was involuntary because he was misinformed about the element of an offense (the Supreme Court having clarified the elements of the offense after his conviction.  The court stated:  **"Petitioner contends that the record reveals that neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged.  Were this contention proved, Petitioner's plea would be.....constitutionally invalid"**.  Appellant argues that the same occurred in his case because the court do not understood the elements of 18 USC § 1028A(a)(1) that was later on clarified by the Supreme Court in **FLORES-FIGUEROA**, supra.-

As explained below, the Appellant finds that the new rule asserted in **FLORES-FIGUEROA**, supra, is retroactively applicable to cases on collateral review.  "A new rule applies retroactively in a collateral proceeding only if:  (1) The rule is substantive or  (2) The rule is a 'watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceedings'" [see **TEAGUE vs. LANE** - 489 U.S. 288, 311 (1989) -plurality opinion-; see also **WHORTON vs. BOCKTING** - 549 U.S. 406, 416 (2007)].  The Supreme Court has identified two (2) categories of "substantive" rules: **"decisions that narrow the scope of a criminal statute by interpreting its terms"**, and **"constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power**

punish" [see <u>SCHRIRO vs. SUMMERLIN</u> - 542 U. S. 348, 351-52 & N.4 (2004)].   An example of the first type of substantive rule is the holding of <u>BAILEY vs. U.S.A.</u> - 516 U. S. 137 (1995), that a conviction for "use" of a firearm under 18 USC § 924(c) requires proof of the defendant's "active employment of the firearm" [see <u>BOUSLEY</u>, supra at 614, 620-21 (1998)].   An example of the second type of substantive rule is the rule adopted in <u>ATKINS vs. VIRGINIA</u> - 536 U. S. 304, 321 (2002), that "the Constitution 'places a substantive restriction on the State's Power to take the life' of a mentally retarded offender".-

In <u>FLORES-FIGUEROA</u>, supra, the Supreme Court construed the knowledge element of the aggravated identity theft statute 18 USC § 1028A(a)(1).   The court held that in order to establish a violation of § 1028A, the government must know show that the defendant knew that the means of identification which was used by the defendant belonged to another person [see <u>FLORES-FIGUEROA</u>, supra].   In other words, **mere proof that the means of identification used by a defendant, such as a social security number or resident alien card, was assigned to an actual person is in <u>itself insufficient</u> to establish a violation of §1028A.**   Moreover, the Supreme Court further found that the term "knowingly" in § 1028A(a)(1) applies to each of the subsequent elements of the statute as  a matter of ordinary English usage [see <u>FLORES-FIGUEROA</u>, supra].-

It is evident that the Supreme Court's ruling thus constitutes a narrowing of the statute as previously construed by the 11th Circuit's decision in <u>U.S.A. vs. HURTADO</u> - 508 F.3d 603 (11th Cir. 2007)].   Thus, <u>FLORES-FIGUEROA</u>, supra, applies retroactively to cases on collateral review [see <u>BOUSLEY</u>, supra].   Although the <u>FLORES-FIGUEROA</u> claim  could have been, but was not raised on appeal, the Appellant can have the claim considered on collateral review if he can demonstrate cause for the failure to raise the claim earlier, as well as actual prejudice resulting from the alleged error [see <u>U.S.A. vs. FRADY</u> - 456 U. S. 152 (1982)].   The caused and prejudice standard requires the appellant to show not only that "some objective factor external to the defense" impeded his efforts to raise the issue

earlier [see **COLEMAN vs. THOMPSON** - 501 U. S. 722, 753 (1992)], but also that the error he alleged "worked to his actual and substantial disadvantage" [see **FRADY**, supra].-

Here, the Appellant meets **BOUSLEY**'s actual innocence exception to the **FRADY** procedural bar rule. In **BOUSLEY**, supra, the Supreme Court extended the actual exception to the procedural bar rule to cases where the defendant had pled guilty but a post-conviction change in the law potentially shows the conviction and punishment are for an act that the law does not make criminal. "Actual innocence is not itself a substantive claim, but rather serves only to lift the procedural bar caused by Appellant's failure timely to file his § 2255 **motion**" [see **U.S.A. vs. MONTANO** - 398 F.3d 1276, 1284 (11th Cir. 2005)], attacking conviction based on guilty plea". The movant in **BOUSLEY**, supra, had pled guilty to an offense under the "use" prong of 18 USC § 924(c) prior to the Supreme Court's decision in **BAILEY vs. U.S.A.** - 516 U. S. 137 (1995)], which significantly narrowed the meaning of "use" under § 924(c). **BOUSLEY**, supra, did not challenge his § 924(c) conviction on appeal and instead filed a § 2255 **motion**, relying on **BAILEY**, arguing that his guilty plea was not knowing and voluntary because neither he, his attorney, nor the court correctly understood the essential elements of the crime with which he was charged and pled guilty to. The Supreme Court held that **BOUSLEY**'s **BAILEY** challenge was procedurally barred under **FRADY** because he had not raised this argument on direct appeal [see **BOUSLEY**, supra]. The court further held, however, that **BOUSLEY**'s claim could still be reviewed if he could establish that constitutional error in his plea colloquy had probably resulted in the conviction of one who is actually innocent.-

"To establish actual innocence, Appellant must demonstrate that, 'in light of all the evidence', it is more likely than not that no reasonable juror would have convicted him'" [see **BOUSLEY**, supra, quoting **SCHLUP vs. DELO** - 513 U. S. 298, 327-28 (1995)]. The court clarified that "actual innocence means factual innocence, **not mere legal insufficiency**" [see **BOUSLEY**, supra]. The court concluded,

"[I]f, on remand, Appellant can make that showing, he will then be entitled to have his defaulted claim of an <u>unintelligent</u> plea considered on its merits" [see <u>BOUSLEY</u>, supra].-

In this case, the government refutes Appellant's claim that he was innocent by arguing, **"though the Appellant now claims he did not know that the identification he used actually belonged to another individual, he admitted, as evidenced by his signature on the <u>factual proffer</u>, that he knowingly used the Puerto Rican Birth Certificate belonging to another individual. As such, appellant cannot now claim that he lacked knowledge that <u>A.B.S.</u> was an actual individual"** [see CV D.E. #6, at page #10]. The government correctly states that the evidence supporting Appellant's **<u>Count 4</u>** is found in the **<u>Factual Proffer</u>** signed by Appellant. However, **contrary to the government's position, a review of this document reveals that the government did not establish that the Appellant knew the identity used belonged to an actual person"** [see <u>MAGISTRATE JUDGE's R & R at page 15</u>]. The factual proffer provides in pertinent part:

> On or about June 18, 2008, the defendant, **VERTILIO DE LA ROSA** applied for a United States passport at the North Miami Post Office in Miami-Dade County, Florida, in the name of A.S.B. The defendant submitted an application for a United States passport representing that his name was A.S.B., when in truth and in fact, the defendant knew his name was not A.S.B. The defendant presented a Puerto Rico Birth Certificate in the name of A.S.B. as proof of citizenship and a Florida Driver License in the name of A.S.B. as evidence of identification. **The defendant knowingly used the Puerto Rico Birth Certificate in the name of A.S.B., which is the means of identification of another person, without lawful authority.**-

> On July 9, 2008, defendant was read a <u>Miranda</u> warning in Spanish and waived his <u>Miranda</u> rights in writing. Defendant admitted that <u>he purchased the Puerto Rico Birth Certificate along with a Social Security Card</u> in the name of A.S.B. for $1,500.00 and admitted that he falsely completed an application for a United States passport in the name of A.S.B. [see CR DE#19].-

Nothing in the above factual proffer establishes that Appellant knew that A.S.B. was a <u>real individual</u>. In his post-Miranda statement, he admitted that <u>he purchased a Puerto Rico birth</u>

**certificate and Social Security Card**, but did not admit that he knew the individual named on these documents was an actual person.   Thus, as correctly determined by the Supreme Court in **FLORES-FIGUEROA**, supra, Appellant's conviction and sentence for **aggravated identity theft** pursuant to **18 USC § 1028A(a)(1) CAN NO LONGER STAND**.   The Appellant is entitled to vacatur of his conviction and sentence as to **COUNT 4**.-

    The Appellant has clearly established that he is entitled to relief under **28 USC § 2255**, and therefore vacatur of his judgment may be warranted and a new sentencing hearing recommended.   **First**, **FLORES-FIGUEROA** applies retroactively to this case on collateral review such that the Appellant's prior conviction for **aggravated identity theft** must be vacated by this 11th Circuit Court of Appeals.   **Second**, the Appellant's motion has establish cause and prejudice, as well as actual innocence to excuse the bar to his **FLORES-FIGUEROA** claim.-

## SUMMARY OF ARGUMENTS

In this case, the government refuted Appellant's claim that he was innocent by arguing, "though the Appellant now claims he did not know that the identification he used actually belonged to another individual, he admitted, as evidenced by his signature on the <u>factual proffer</u>, that he knowingly used the Puerto Rico Birth Certificate belonging to another individual. As such, he cannot now claim that he lacked knowledge that A.S.B. was an actual individual" [see CV-DE #6 at page 10]. **The government correctly states that the evidence supporting Count 4 is found in the Factual Proffer signed by Appellant. However, contrary to the government's position, a review of this document reveals that the government did not establish that the Appellant knew the identity used belonged to an actual person** [see Magistrate Judge White's R & R at page 15 supporting the above argument].-

The information on which the USPO relied and the information Appellant himself provided in his § 2255 motion regarding the 1993 State Conviction establishes that he had NO a prior felony drug trafficking offense as it is defined in the **U.S.S.G. § 2L1.2** for which the sentence imposed was <u>13-months</u> or less. Appellant's 1993 State conviction was not properly considered to support a 12-level enhancement.-

**Rule 35 -FRCRP-** provides that a motion to reduce based on <u>substantial assitance</u> to the government may only be made by motion of the government. The government has a considerable amount of discretion regarding this decision, and the 11th Circuit has held that the government's determination of "substantial assistance" is encompassed within the zone of prosecutorial discretion and subject to review only upon a showing of a constitutionally impermissible motive or the breach of an express agreement to file a motion [see **U.S.A. vs. GONZALVEZ** - 121 F.3d 1416, 1419 (11th Cir. 1997); see **U.S.A. vs. FORNEY** - 9 F.3d 1492, 1502 (11th Cir. 1993), citing **WADE vs. U.S.A.** - 504 U. S. 181 (1992)].-

Appellant argues that at the time of his sentencing hearing, AUSA, MRS. KELLY KARASE d/b/a U. S. Government at her own request to the District Judge promised the filing of a **Rule 35 - FRCRP- Motion**, due to Appellant's substantial assistance [see Appellant's Sentencing Transcripts at page #4 as Exhibit #6]. The law is clear that **"solemn declarations in open court carry a strong presumption of verity, forming a formidable barrier in any subsequent collateral proceedings....as are contention which in the face of the record are wholly incredible"** [see **MACHOBRODA vs. U.S.A.** - 368 **U.S.** 487 (1962)].-

On the record before the District Court, it is evident that the government stated such contention. Moreover, by way of entering into the negotiated plea agreement, the Appellant may clearly demonstrate to this 11th Circuit that his constitutional liberty rights has been deprived by the government, in now denying the benefit of a **Rule 35 -FRCRP- Motion**. Under these circumstances, there is showing that the plea was breached by the government.-

# C O N C L U S I O N

Appellant / Petitioner / Movant, **VERTILIO DE LA ROSA**, USMS #06499-265, submits that the 11th Circuit Court of Appeals shall <u>GRANT</u> his "COA", and reverse his conviction and sentence for <u>Aggravated</u> <u>Identity Theft</u> under 18 USC § 1028A(a)(1), <u>and GRANT relief as</u> <u>requested in this Brief for his other claims.</u>-

Respectfully submitted on December 24, 2010, by and on behalf of

*Vertilio de la Rosa*

**VERTILIO DE LA ROSA**
USMS #06499-265
MCRAE CORRECTIONAL FACILITY
P. O. DRAWER #30
MCRAE CITY, GA 31055.-

## CERTIFICATE OF COMPLIANCE

I, **VERTILIO DE LA ROSA**, USMS #06499-265, acting as **Pro se** **litigant** in this matter, <u>CERTIFY</u> this brief with the type-volume limitation of <u>Rule 32(a)(7) -FRAP-</u>. According to <u>Rule 32(d) -FRAP-</u>, (Local Variation), because the Appellant is acting as **Pro se litigant**, the 11th Circuit Court of Appeals may accept this brief that do not meet all of the form requirements of the above Rule.-

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a TRUE and CORRECT copy of the foregoing Appellant's brief was mailed on December 24, 2010, by U. S. Postal Service to **MRS. ANNE R. SCHULTZ**, AUSA, U. S. Attorney's Office, 99 N.E. 4th Street, Miami, Florida 33132-211.-

*Vertilio de la Rosa*

**VERTILIO DE LA ROSA**
USMS #06499-265

A S   E X H I B I T S:

(1) NY Criminal Statute § 220.39;

(2)   ICE's Image Storage and Retrieval System Information;

(3)   Appellant's voluntary statement before the
      U. S. Department of State (Diplomatic Security Service);

(4)   USDOS's Agent-Affidavit;

(5)   Appellant's PSRI (Page #4 at ¶ #7); and

(6)   Appellant's Sentencing Transcripts pages #4 and #7.-

220.39 Criminal sale of a controlled substance in the third degree.
   A person is guilty of criminal sale of a controlled substance in the
third degree when he knowingly and unlawfully sells:
   1. a narcotic drug; or
   2. a stimulant, hallucinogen, hallucinogenic substance, or lysergic
acid diethylamide and has previously been convicted of an offense
defined in article two hundred twenty or the attempt or conspiracy to
commit any such offense; or
   3. a stimulant and the stimulant weighs one gram or more; or
   4. lysergic acid diethylamide and the lysergic acid diethylamide
weighs one milligram or more; or
   5. a hallucinogen and the hallucinogen weighs twenty-five milligrams
or more; or
   6. a hallucinogenic substance and the hallucinogenic substance weighs
one gram or more; or
   7. one or more preparations, compounds, mixtures or substances
containing methamphetamine, its salts, isomers or salts of isomers and
the preparations, compounds, mixtures or substances are □f an aggregate
weight of one-eighth ounce or more; or
   8. phencyclidine and the phencyclidine weighs two hundred fifty
milligrams or more; or
   9. a narcotic preparation to a person less than twenty-one years old.
   Criminal sale of a controlled substance in the third degree is a class B felony.

EXHIBIT #1

INS Image Storage and Retrieval System (Web-ISRS)

## Detail Information (ICF)

| | | |
|---|---|---|
| Alien Number | ████0194 | |
| Name | DE LA ROSA, VERTILIO | |
| Social Security Number | ████ | |
| Date of Birth | 10/28/1967 | |
| Country of Birth | DOMINICAN REPUBLIC | |
| Class Of Admission | S26 | |
| Admission Date | 12/01/1990 | |
| Image Source | ICF | |
| Expiration Date | 01/17/2002 | |

EXHIBIT #2

U.S. Department of State

DIPLOMATIC SECURITY SERVICE

**VOLUNTARY STATEMENT**

EXHIBIT #3

Yo _Vetilio de la Rosa_ , voluntariamente hago por este medio la siguiente declaración, a

_JOSEPH DESMARAIS_ , quien se me ha identificado como agente especial de U.S. Department of State, Bureau of Diplomatic Security. Entiendo y reconozco que esta declaración pudiera ser utilizada en un procedimiento administrativo o judicial, incluyendo un procedimiento criminal, y además pudiera ser yo identificado en cualquier procedimiento como la persona que ha hecho esta declaración.

Yo nací el _28_ (día) de _Octubre_ (mes) de _1967_ (año) en la ciudad de _Hato Mayo_, en el estado/ el país de _St Republica Dominana_ con el siguiente domicilio actual _1485 NE 142 Ste 33161_

Yo Vetilio de la Rosa compre una acta d Nacimiento y un social por la suma de 1500. Dolares un amigo Ricardo Linare el cual use para sacar un pasaporte con e nombre de Alvin Santos Burges

Yo Sali de Santo Domingo en el 2001 Asia, San Martin y de San Martin entre ilegal mente a santomas de Santomas viaje neri york donde dure un tiempo ante de viajar a miami, donde compre esta Dokumento Ros, que necesitaba trabajar lilegal mente

DS-7620
07-2006

31

AFFIDAVIT                    EXHIBIT #4

I, Joseph P. Desmarais, having been duly sworn, hereby depose and state:

1.      I am a Special Agent of the U.S. Department of State, Bureau of Diplomatic Security (hereinafter "DS") and have been so employed since March of 2006. Prior to being assigned to DS, I was a police officer with the City of North Richland Hills, Texas. Currently, I conduct investigations into criminal violations of the laws governing the issuance of U.S. passports, U.S. visas, and other travel documents used to transit international borders. I make this affidavit based upon my personal knowledge and investigation, as well as investigations from other criminal investigators (hereinafter "agents"). Because this affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint, it does not include every fact known by me in connection with this investigation.

2.      On June 18, 2008, an individual (hereinafter "Subject") purporting to be "ASB" appeared at the U.S. Post Office in North Miami, Florida, and executed an application for a United States passport. On his passport application, the Subject listed his date of birth as October 20, 1969, and his place of birth as San Juan, Puerto Rico. As proof of U.S. citizenship, the Subject presented a Puerto Rico birth certificate in the name of "ASB" and, as proof of identity, the Subject presented a Florida driver license, in the name of "ASB" bearing number XXX-XXX-XX-380-0. The Subject stated on the application that his social security number was XXX-XX-1370. The Subject swore under oath that all information in the passport application was true and that the photograph attached to the passport application was a true likeness of him. The Subject then signed the application. The matter was referred to DS for investigation.

3.      On July 9, 2008, the Subject came to the Miami Passport Agency, Miami, Florida, under the ruse that he would be able to pick up the U.S. Passport he had applied for on June 18, 2008. DS agents met with the Subject who agreed to be interviewed regarding the passport

application. During the interview the Subject told agents that his true name was "Vertilio Delarosa," born October 28, 1967, in the Dominican Republic. After being deported from the U.S. in 1995, he had reentered the U.S. through St. Thomas, U.S. Virgin Islands, without being detected by immigration officials. After entering and living in the United States for several years, the Subject had attempted to obtain the U.S. Passport using fraudulently obtained documents to travel back to the Dominican Republic and to obtain employment in the United States. The Subject stated he had purchased the birth certificate and the social security in the name of "ASB" from a friend for $1,500.00.

4.    On July 9, 2008, DS agents conducted immigration records checks for Vertilio Delarosa, born October 28, 1967, in the Dominican Republic. Citizenship and Immigration Service (CIS) records for "Vertilio Delarosa," born October 28, 1967, in the Dominican Republic, show a deportation from the U.S. on January 5, 1995.

5.    Based on the above facts and circumstances, I believe there is probable cause to believe that on June 18, 2008, in the Southern District of Florida, Vertilio Delarosa did willfully and knowingly make a false statement in an application for a U.S. passport, in violation of Title 18 United States Code, Section 1542.


AFFIANT FURTHER SAYETH NAUGHT.


SPECIAL AGENT JOSEPH P. DESMARAIS
U.S. DEPARTMENT OF STATE


Sworn to and subscribed before me
this 10th day of July, 2008


WILLIAM C. TURNOFF
UNITES STATES MAGISTRATE JUDGE

EXHIBIT # 5

## PART A. THE OFFENSE

### Charge(s) and Conviction(s)

1. **On October 3, 2008, the defendant pled guilty to Counts One, Four and Five of a five-count Indictment. Count One charges false statement on an application for a United States passport, in violation of 18 U.S.C. § 1542. Count Four charges aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). Count Five charges illegal re-entry, in violation of 8 U.S.C. § 1326(a).**

2. Pursuant to a written plea agreement, the government agreed to dismiss Counts Two and Three of the Indictment after sentencing. It is also agreed that the government will recommend a two level reduction for acceptance of responsibility, pursuant to § 3E1.1. The government agreed to recommend that the Court impose a sentence at the low end of the Guidelines. This is conditioned upon the defendant making a full and complete disclosure to the probation office regarding the offense.

3. The defendant agreed to cooperate with the United States Attorney's Office. If the defendant's cooperation rises to the level of substantial assistance, the government may file a motion pursuant to § 5K1.1 and/or 18 U.S.C. § 3553(e).

4. The defendant agreed to waive all rights conferred by 18 U.S.C. § 3742.

### The Offense Conduct

5. The following was provided by Assistant United States Attorney (AUSA) Kelly Karase.

6. On June 18, 2008, the defendant, having previously been removed from the United States on January 5, 1995, for a conviction of attempted sale of controlled substances in New York, on May 23, 1994, applied for a United States passport at a post office in Miami-Dade County, Florida. The defendant indicated on the passport that his name was A.S.B., born in Puerto Rico, when in truth and in fact, he knew his name was not A.S.B. and he was not born in Puerto Rico. As proof of citizenship, he presented a birth certificate and A Florida driver's license, which bore the name, A.S.B.

7. On July 9, 2008, the defendant was advised of his Miranda rights in Spanish and waived same in writing. He provided a statement admitting he purchased the Puerto Rico birth certificate along with a social security card in the name of A.S.B. for $1,500. He also admitted to falsely completing an application for a United States passport in the name of A.S.B.

4

EXHIBIT #6

4

Rule #35

1  government is in discussions with the defendant currently

2  and we expect to be filing a motion under a rule 35 at a

3  later date, but he has been cooperative so would ask the

4  Court to also take that into consideration.

5          THE COURT:  Thank you, Ms. Karase.

6          Mr. Wilcox?

7          MR. WILCOX:  Your Honor, I think Ms. Karase

8  covered it all, and I was especially pleased to hear her

9  optimism about filing a motion to reduce in the future.

10          THE COURT:  All right.  Mr. De~La~Rosa, do you

11  wish to be heard, sir?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Go ahead.

14          THE DEFENDANT:  I admit and I recognize that I

15  made a mistake for which I'm paying for before all the

16  crime that I have committed is lying, the crime of lying.

17  But I don't want to release myself from an obligation

18  because lying is a crime whichever way you look at it.  But

19  when I lied, I lied because I needed to legalize my status.

20  I needed to obtain documents in order to work legally.  And

21  for that, I apologize to you, Your Honor, to the U.S.

22  government, and to God also.

23          I'm fully repentant of having committed that

24  mistake.  And since I'm a deportable person, I would like

25  the judge to give me the minimum amount of sentence so I

EXHIBIT # 7

1  appeal, you may apply for leave to appeal

2  in~forma~pauperis.

3          Is there anything further?

4          MS. KARASE:  Yes, Your Honor.  The government

5  moves to dismiss Counts 2 and 3 of the indictment.

6          THE COURT:  The motion is granted.

7          MR. WILCOX:  Your Honor, there is an appeal

8  waiver in the plea agreement too.

9          THE COURT:  I understand that.  But there may be

10  something that's not waived by the agreement that he has a

11  right to appeal, so I still advise them.

12          MR. WILCOX:  Okay.

13          THE COURT:  Okay.  We will stand in recess.  You

14  all have a happy holiday.

15          MS. KARASE:  Thank you, Judge.  You too.

16          MR. WILCOX:  Thank you, Your Honor.

17          (Thereupon, the hearing was concluded at

18  11:37 a.m.)

19                  - - -

20

21

22

23

24

25